```
                    UNITED STATES DISTRICT COURT         FILED
                    NORTHERN DISTRICT OF ALABAMA
                         SOUTHERN DIVISION             00 DEC 20 PM 1:48

                                                       U.S. DISTRICT COURT
EJELLA GARDNER,               )                         N.D. OF ALABAMA
                              )
     Plaintiff,               )
                              )
v.                            )   Civil Action No. CV-00-S-2884-S
                              )
UNITED HEALTHCARE OF ALABAMA, )
INC.,                         )                         ENTERED
                              )
     Defendant.               )                         DEC 20 2000
```

## MEMORANDUM OPINION

Plaintiff alleges that defendant terminated her employment because of her race, in violation of 42 U.S.C. § 1981. The action presently is before the court on defendant's motion to stay proceedings and compel arbitration (doc. no. 4). Upon consideration of the motion, pleadings, briefs, evidentiary submissions, and oral arguments of counsel, this court concludes the motion should be granted.

### I. BACKGROUND

Defendant, United Healthcare of Alabama, Inc., is a wholly-owned subsidiary of United HealthCare Corporation, a Minnesota entity that manages and operates various health care businesses, such as HMOs, managed health care plans, and insurance companies. Plaintiff, Ejella Gardner, was hired by defendant to work as a staff nurse in its Jefferson County, Alabama facility on May 5, 1997. On that same date, plaintiff was issued an employee handbook

which contained provisions relating to defendant's internal dispute resolution process and arbitration policies.  The arbitration provisions have been revised on occasion.  For example, a revised arbitration policy which "supercedes any and all prior versions" became effective on May 17, 1999,[1] and it provides in relevant part that:

> This Policy is a <u>binding contract</u> between UnitedHealth Group and its employees and its former employees <u>to resolve all employment-related disputes, that are based on a legal claim through final and binding arbitration</u>. <u>Arbitration is the exclusive forum for the resolution of such disputes</u>. The disputes covered under this Policy include any dispute between an employee and any other person where: (1) the employee seeks to hold UnitedHealth Group liable on account of the other person's conduct, or (2) the other person is also covered by this Policy and the dispute arises out or or relates to employment, including termination of employment, with UnitedHealth Group.
>
> Because many employment disputes can be successful resolved in the [Internal Dispute Resolution ("IDR")] process, employees may not use this Policy unless they have first completed the IDR process.  If an employment related dispute is not resolved through the IDR process and the matter is based on a legal claim, any party to the dispute may initiate the arbitration process. UnitedHealth Group is not required to follow the steps of either IDR of the Policy before initiating or implementing any disciplinary action.
>
> <u>A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal, state or local statute, regulation, or common law doctrine regarding or relating to employment discrimination</u>, terms and conditions of employment, <u>or</u>

---

[1] Plaintiff alleges that her employment was terminated on September 30, 1999.  See Complaint, ¶ 11.

<u>termination of employment including, but not limited to, the following</u>:  Title VII of the Civil Rights Act of 1964, <u>the Civil Rights Act of 1866</u>, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, and all applicable amendments, except as provided in the summary plant descriptions of United Health Group's benefit plans; state human rights or fair employment practices laws; breach of contract, promissory estoppel, or any other contract theory; and defamation, employment negligence, or any other tort theory. ...[2]

The arbitration provision also provides that the rules and procedures to be utilized during arbitration are "generally based on the Employment Dispute Resolution Rules of the American Arbitration Association ('AAA')."[3]  Moreover, the handbook expressly details how certain expenses of arbitration will be paid. For example, when an <u>employee</u> initiates arbitration, the defendant "shall pay 100 percent in excess of the first twenty-five dollars ($25) of the required AAA administrative fee."[4]  In cases such as this one, however, where the defendant <u>employer</u> initiates arbitration, "the company is responsible for 100% of all AAA administrative fees."[5]  Moreover, paragraph C. 26, pertaining to expenses, provides:

---

[2]Defendant's evidentiary submission in support of motion to compel arbitration (doc. no. 5), Exhibit C, § B ("Scope of Policy"), at 1-2 (emphasis added).

[3]*Id.*, § C ("Arbitration Rules and Procedures"), at 2.

[4]*Id.*, ¶ 1(a) ("Initiation of Arbitration Proceedings"), at 2.

[5]*Id.*, ¶ 1(b) ("Initiation of Arbitration Proceedings"), at 2.

3

> The expenses of witnesses for either side shall be paid by the party requiring the presence of such witnesses. Each side shall pay its own legal fees and expenses, except where such legal fees and expenses may be awarded under applicable law. All other expenses (except Postponement Fees or Additional Hearing Fees) of the arbitration, such as required travel and other expenses of the arbitrator (including any witness produced at the direction of the arbitrator), and the expenses of a representative of AAA, if any, shall be completely paid by UnitedHealth Group. However, if the arbitrator finds that the employee's or UnitedHealth Group's complaint is frivolous, meritless, or vexatious, or was not filed in good faith, the arbitrator may require the employee or UHC, as applicable to reimburse the other party for the arbitrator's expenses. The allocation of expenses may not be changed by the arbitration award.[6]

Plaintiff executed a document entitled Code of Conduct and Employee Handbook Acknowledgment on May 5, 1997. The acknowledgment form states:

> I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all employment related disputes based on a legal claim to arbitration under [defendant's] policy.[7]

Twenty-one nurses, including plaintiff, were laid off by defendant on September 30, 1999. Plaintiff filed the instant civil action on October 11, 2000, alleging that defendant violated 42 U.S.C. § 1981 because: she was terminated based upon her race; she was not rehired by defendant subsequent to being laid off; and, she was held to more stringent attendance standards than white

---

[6] *Id.*, ¶ 26 ("Expenses"), at 8.
[7] *Id.*, Exhibit B (acknowledgment form), at 2.

employees.[8]

Plaintiff initiated this civil action without first utilizing defendant's internal dispute resolution procedures or pursuing her claims through arbitration. As such, defendant now seeks to stay these court proceedings and compel arbitration in accordance with defendant's arbitration policy.

## II. DISCUSSION

This court previously addressed the arbitrability of federal statutory claims in *Hall v. Labor Ready, Inc.*, Civil Action No. CV-98-S-1360-NE (N.D. Ala. Sept. 14, 1999), a copy of which is attached to this opinion and, by this reference, incorporated herein. Based upon the principles discussed at some length in *Hall*, the court reaches the following conclusions.

First, the relationship between the parties relates to a transaction "involving commerce." 9 U.S.C. § 2. Plaintiff's argument, to the effect that "[she] was locally employed, and conducted her services wholly within the State of Alabama," is unavailing in light of the expansive interpretation given to the phrase "involving commerce." The fact that plaintiff did not cross

---

[8]Plaintiff asserts that she was "written up" on numerous occasions. One of these occasions occurred when plaintiff missed work while taking her daughter to a doctor's office. Plaintiff contends that other white employees were not disciplined when they engaged in similar behavior. Plaintiff argues that more stringent standards were applied to her so that she "could be targeted for the layoff." Complaint ¶ 59.

5

state lines during the performance of her duties is not significant. *Cf. Bacashihua v. United States Postal Service*, 859 F.2d 402 (6th Cir. 1988) (even though post office employee was not personally engaged in interstate commerce, the class of workers to which he belonged was engaged in interstate commerce for purposes of Federal Arbitration Act). Rather, the significant facts are these: defendant is a wholly-owned subsidiary of United Health Group, Inc., a Minnesota corporation that is the parent company of all United HealthCare entities which transact business throughout the United States.[9]

Second, the court is constrained by binding authority to hold that the exclusionary language of 9 U.S.C. § 1 exempts from the scope of the Federal Arbitration Act only the employment contracts of those persons actually involved in the physical movement of goods and commodities in interstate or foreign commerce. *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1060-61 (11th Cir. 1998) (Cox and Tjoflat, JJ., concurring). Plaintiff does not fall into this exception.

Third, plaintiff failed to carry her burden of demonstrating that "Congress intended to preclude a waiver of a judicial forum" for plaintiff's statutory claims. *Gilmer v. Intestate/Johnson Lane*

---

[9] Defendant's supplemental evidentiary submission (doc. no. 6), (Evesque declaration), ¶ 2.

6

*Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991). Here, plaintiff alleges claims based upon 42 U.S.C. § 1981. Not only are actions based upon the Civil Rights Act of 1866[10] specifically mentioned in the parties' arbitration agreement, but other judges of this court have found "no reason why ... § 1981 claim[s] ... should not be subjected to arbitration...." *Wright v. Circuit City Stores, Inc.*, 82 F. Supp. 2d 1279, 1282 (N.D. Ala. 2000). "[D]espite the distinction between apparent claims brought under Section 1981 or Title VII ... nothing ... suggests that compulsory arbitration pursuant to a written arbitration agreement is inconsistent with the underlying purposes of Title VII or Section 1981." *Id.* at 1282. *See also Kelly v. UHC Management Company, Inc.* 967 F. Supp. 1240, 1251 (N.D. Ala. 1997).

Fourth, plaintiff's argument that the arbitration agreement is unenforceable, because the arbitrator is given discretion as to the damages that may be awarded is unpersuasive. The language of the provision in question — *i.e.*, "[t]he arbitrator shall have the authority to grant any remedy or relief that the arbitrator deems just and equitable and <u>which is authorized by and consistent with applicable law</u>, including applicable statutory limitations on

---

[10]Title 42 U.S.C. § 1981 was originally enacted as part of § 1 of the Civil Rights Act of 1866. *See* Jett v. Dallas Independent School District, 491 U.S. 701, 740, 109 S.Ct. 2702, 2725, 105 L.Ed.2d 598 (1989).

damages"[11] — is distinguishable from the arbitration agreement construed in *Paladino*, providing that the "arbitrator is authorized to award damages for breach of contract only...." 134 F.3d at 1057. The language also is distinguishable from the arbitration agreement construed in *Graham Oil Co. v. Arco Products Co.*, 43 F.3d 1244 (9th Cir. 1995), which expressly excluded exemplary damages that otherwise would have been recoverable under the applicable statutory law. The provision in the instant case creates no such limitations or exclusions, and instead states that the arbitrator may grant "any remedy" which is "consistent with applicable law." *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").

Plaintiff next argues that, because the agreement fails to specifically address which party will be responsible for the "fees and costs" of arbitration beyond the initial administrative fee, the entire provision is void. That assertion is not entirely correct, as the language from § C. 26 that is quoted *supra* on page

---

[11] Defendant's evidentiary submission in support of motion to compel arbitration (doc. no. 5), Exhibit C, § C ("Arbitration Rules and Procedures"), ¶ 22(b) ("Scope of Relief"), at 7 (emphasis added).

8

4 demonstrates. Even so, the Supreme Court recently held that a failure to specify which party is to bear the expenses of arbitration does not necessarily render an arbitration agreement invalid. *Green Tree Financial Corp. v. Randolph*, No. 99-1235, 2000 WL 1803919 (U.S. Dec. 11, 2000). When, as here, a plaintiff has made no showing that she would, in fact, bear a heavy financial burden if her statutory claims are submitted to arbitration, the mere fact that an arbitration agreement may be "silent" with respect to all attendant "costs and fees" is not sufficient to void the parties' contract.

> The risk that [plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement. To invalidate the agreement on that basis would undermine the liberal federal policy favoring arbitration agreements. It would also conflict with our prior holdings that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. ... Similarly, we believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.

*Id.* at *7 (internal citations and quotations omitted).

Finally, plaintiff asserts that arbitration does not allow her the same discovery as provided by the Federal Rules of Civil Procedure. That may be (and probably is) true, but it still is not a basis for invalidating the parties' agreement. "Although [discovery] procedures might not be as extensive as in the federal

9

courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer*, 500 U.S. at 31, 111 S.Ct. at 1655 (quoting *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354).

### III. CONCLUSION

Based on the foregoing, the court finds that defendant's motion to stay these proceedings and compel the plaintiff to submit her claims to arbitration in accordance with the terms of the parties' agreement is due to be granted. An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **20th** day of December, 2000.

                                                                             _____
                                                                             United States District Judge

THIS DOCUMENT IS TO VOLUMINOUS TO FAX AND WILL BE MAILED UNDER SEPARATE COVER